Jennings Bailey, Jr., Washington, D. C., Curt M. Avery, New York City, for plaintiff.

Clarence W. Moore, Sol., U. S. Patent Office, Washington, D. C., for defendant.

**SIEMENS–SCHUCKERTWERKE AKTIENGESELLSCHAFT, Plaintiff,**

v.

**David L. LADD, Commissioner of Patents, Defendant.**

**Civ. A. No. 484–63.**

United States District Court
District of Columbia.

Dec. 14, 1964.

JACKSON, District Judge.

This civil action was brought pursuant to 35 U.S.C. § 145 seeking judgment authorizing defendant, Commissioner of Patents, to issue Letters Patent of the United States containing claims 11, 16, 17, 31 through 40, 42 through 48, and 51 through 54 of an application Serial No. 534,852 entitled "Method for the Production and Re-Melting of Compounds and Alloys". The application was filed September 16, 1955, by Otto Gerd Folberth and Rolf Gremmelmaier, and was assigned to the plaintiff. Before the Court, plaintiff has withdrawn claims 11, 16, 17, 31, 35, 36, 40, 43, 44, 45, 51, 52, 53, and 54. Accordingly, only claims 32, 33, 34, 37, 38, 39, 42, 46, 47, and 48 remain for adjudication.

The invention described in the application relates to a method of producing and remelting compounds and alloys, and particularly to the production of certain types of semiconductor compounds.

It appears that prior to plaintiff's invention, certain compounds were known to be useful as semiconductors. One was

of the type $A_{III}B_V$ in which $A_{III}$ is an element of the third group of the periodic table and $B_V$ is an element of the fifth group. Another was of the type $A_{II}B_{VI}$ in which $A_{II}$ is an element of the second group of the period table and $B_{VI}$ is an element of the sixth group. Still a third consisted of a mixed crystal of two different $A_{III}B_V$ compounds in which the element $B_V$ is the same in both.

Also prior to plaintiff's invention, such semiconductors were prepared by various methods, including that of melting the components together and subsequently permitting the melt to cool and solidify. The latter method can be carried out in an open crucible in an air or protective gas atmosphere when the vapor pressure and the vaporizing velocity of the melted substances are so slight that no appreciable vaporization loss of material occurs during the melting operation. Plaintiff's application discloses that for the production of compounds or alloys (including those of semiconductors) which, at the melting temperature and in the state of equilibrium, have a vaporous phase whose composition differs essentially from the composition of the melt, the so-called "Faraday method" involving a closed and sealed system has been found useful, particularly in cases when the vaporous phase at the melting temperature consists essentially of a component or components which are of a comparatively high volatility.

According to the Faraday method only the less volatile component is placed in a melting vessel within the sealed enclosure, whereas the highly volatile component or components are located elsewhere in the sealed enclosure. The enclosure is so heated in the zone of the melting vessel that its contents are melted. The other portions of the enclosure are heated to a lesser temperature sufficient to cause the highly volatile component or components to volatilize and be maintained at equilibrium partial vapor pressure above the melt. While the proper temperatures are maintained, the melt enriches itself with the more highly volatile component or components from the vapor phase until the vapor pressure of the latter above the melt is equal to the vapor pressure above the unevaporated highly volatile component or components elsewhere in the sealed enclosure. In this manner, with a suitable choice of the temperature program, a predetermined composition of the melt or of the subsequently solidified compound in crystalline form is obtained.

The Faraday method has certain disadvantages which are overcome by the improved method of plaintiff's application. The improvement, according to plaintiff's description of it, resides in the fact that the weighed-in quantities of the components as well as the temperature program are so chosen that, on the one hand, the melt can take the desired proportion of the more volatile component out of the vapor phase and that, on the other hand, the remainder of this component, or components, is just sufficient to form the share of this component or components, of the equilibrium vapor phase above the melt so that there is no residual or bottom body of the low boiling or more volatile component or components, on the bottom of the processing vessel at the termination of the melting operation. As a result, and in contrast to the Faraday method, it is not necessary to maintain the temperature of the coldest spot of the melting vessel at an accurate value; and the processing becomes independent of the complicated vapor-pressure conditions obtaining with polymorphous conversions of the bottom body.

Plaintiff also discloses that to terminate the process the sealed enclosure is *slowly* pulled out of the heated zone so that the melt is slowly cooled and solidified. Claim 33, however, is the only claim limited to slow cooling.

The method is applied specifically to making binary compounds of the types

$A_{III}B_{VI}$ and $A_{II}B_{VI}$ and also ternary alloys or compositions such as in $(As_y P_{1-y})$. Claims 37, 39, and 47 are drawn to the making of binary compounds by this method. Withdrawn claims 35 and 56 recite the making of a ternary composition. Withdrawn claims 31, 40, 41, and other withdrawn claims by their language embrace both binary compounds and ternary compositions.

The application additionally states that the involved compounds or alloys may be melted pursuant to a variation of the disclosed method with possible use of previously known zone-melting techniques. All the claims before the Court on the merits except claims 37, 39, and 47 set forth a melting method.

Finally, the application discloses a variation of the method in which gallium phosphide is melted to a melt containing less phosphorous than corresponds to the stoichiometric composition of the compound. Subsequently, the basic method of the invention is used to convert *almost* the entire melt to stoichiometric gallium phosphide. Only a relatively small portion of the last solidifying crystal contains gallium phosphide and secondarily solidified gallium. This last portion can be cut off and discarded if a stoichiometric compound only is to be obtained.

The Patent Office Board of Appeals affirmed the Examiner's rejection of all the claims on the ground that plaintiff is attempting to acquire two patents for the same invention. More precisely, the position of the defendant Patent Office is that the claims of the application at suit are not distinct, in a patentable sense, from the claims of a patent previously granted to plaintiff on similar subject matter. The defendant's theory is that the claims at suit contain no patentable difference from those in plaintiff's patent to Folberth (one of the co-inventors in the application at suit) when the difference is viewed in light of another patent, to one Pfann.

The Folberth patent, No. 2,944,975, was actually filed after the application at suit, and states itself to be an improvement or modification thereof. Folberth's disclosure is substantially the same as plaintiff's, except that the latter does not expressly set forth the zone-melting or quick freezing techiniques.

■ It is settled law that in order for the application claims and the patent claims to be separately patentable, the differences in their subject matter must not have been obvious at the time of the invention to one skilled in the art. Other relevant patents or publications, known at the time, can be used to show this obviousness.

The Pfann patent, No. 2,739,088, discloses the use of zone-melting for controlling solute distribution in semi-conductors either for purposes of homogenizing or purifying. In the specific examples mentioned, and in the claims, the solute is a minor but significant ingredient of the semi-conductor material. A starting material with essentially no solute gradient on a macro-scale is obtained by rapidly cooling the molten alloy. Thereafter, the zone-melting process is practiced, which Pfann describes as causing a small molten region or zone to traverse a relatively long rod of solid alloy at a substantially uniform rate of travel. The zone melting may be by a single-pass in only one direction, or by "reverse zone-melting", in which there are successive traverses of the full rod length in opposite directions. Where single-pass melting is used, the end regions of the rod have a concentration of impurities different from the mean concentration in the remainder of the rod. Reverse zone melting produces an essentially uniform solute distribution throughout. One of the disclosed procedures for removing impurities while keeping them uniformly distributed in the rod is to zone-melt in one direction with most of the solute concentrated in the last or end zone, cropping the end, and then to zone-melt in the opposite direction. This yields a uniform but greatly reduced concentration of impurities in the

rod. Also described, however, is a reverse zone melting procedure which achieves a uniform solute or impurities distribution *without* purification or reduction of the amount of impurities in the rod.

Thus, the Pfann patent clearly shows (1) a method of zone-melting which renders homogeneous a non-homogeneous mixture of the type claimed by plaintiff, and (2) the application of this zone-melting process to a macroscopically homogeneous starting material obtained by rapid solidification of a melt.

At trial, plaintiff relied upon two principal facts in order to establish the proposition that the claims of the application were distinct, in a patentable sense, from those of the Folberth patent. The first was that the claims of the application are limited to binary compounds, while those of the patent are limited to tenary compounds. The second was that the quick cooling feature, appearing in all the Folberth claims, is not included in those of the application.

In response, the Patent Office argued that both the claims of the application and the claims of the patent are drawn to *methods* for making previously known compounds or alloys, and that as to the materials utilized, the claims differ only in scope. More particularly, the Patent Office maintained that to any person ordinarily skilled in the art, given any one of the application claims and the homogenizing method of the Pfann patent, there would be suggested the method substance of the patent claims applied to all prior binary *and* ternary semi-conductor compounds or alloys having components of a suitably differing volatility.

The Court is inclined to agree with the view of the defendant. The essential similarity of the methods spelled out in the respective sets of claims far outweighs any difference arising from the recitation of binary compounds in one instance and ternary compounds in the other. The improved method is the inventive concept here, and it clearly embraces both. Further, any distinction residing in the application of zone-melting to a quick frozen melt seems unquestionably to be negated in a patentable sense by the Pfann disclosure. The Court cannot say the Patent Office decision here was unwarranted by the evidence.

Accordingly, the Court finds for the defendant and against the plaintiff, and will order that the Complaint be dismissed.

The above Opinion contains Findings of Fact and Conclusions of Law.